THE SIEGEL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21359.   Promulgated November 15, 1932.

*Arthur R. Foss, Esq.,* and *Florence L. Sivertson,* C. P. A., for the petitioner.

*Arthur Carnduff, Esq.,* for the respondent.

#### OPINION.

STERNHAGEN : Respondent determined deficiencies in petitioner's income and profits taxes of $3,526.98 for 1918, $6,036.57 for 1919, and $4,579.20 for 1921. Several issues have been removed by the parties from controversy. The only remaining issue is whether respondent has erroneously reduced petitioner's invested capital by $14,250.60, part of a dividend paid in 1917 and which petititioner treated as an account receivable. The following facts were stipulated:

During the period here involved the petitioner corporation had four stockholders, namely, Ferdinand Siegel, Max Baer, Abram I. Wolf and Bernard B. Selling. The first three were the chief stockholders, the fourth one held only one share of stock. The first three were also the directors. Ferdinand Siegel was president, Max Baer was secretary and general manager, and Abram I. Wolf was vice-president and treasurer. During the period here involved and for many years prior thereto, Max Baer was the moving spirit of petitioner corporation.

It was the custom of petitioner to allow Max Baer to determine and direct distributions to stockholders from earned surplus prior to any formal declaration of dividends. Subsequently such distributions, except in the one instance described in the next paragraph, were fully ratified and approved by the Board of Directors as dividends in the amount so distributed. An example of this course of action is reported in the minutes of the directors' meeting on March 29, 1916, as follows:

" It appearing that the net earnings of the corporation during the past year was in excess of Twenty-one thousand dollars a dividend of twenty-one thousand dollars was declared, of which six thousand dollars had been distributed September 21, 1915, and nine thousand dollars had been distributed on February 7, 1916. It was moved, supported, and unanimously carried that the remaining six thousand dollars should be distributed among the stockholders in accordance with their respective interests as soon as conditions permit and the part payment of the dividends previously distributed were unanimously ratified and confirmed."

During the year 1917 the sum of $30,000.00 was distributed in this manner to the stockholders. The Board of Directors at a meeting held on February 2, 1918, took action on said distribution as reported in minutes thereof, as follows:

"The Secretary reported that checks had been sent out for $30,000.00 as dividends to the stockholders. After a discussion and it appearing that a very large sum of money must be set aside to pay the war income and excess profits tax, it was determined that the amount sent out to stockholders was too large for dividends, and it was moved and carried that a dividend of 75% upon the par value of the stock be declared for the entire year and that each of the stockholders should be charged up with the amount which he had been overpaid and should be considered as a debtor to the corporation therefor, the sum to be deducted from any future dividends payable upon stock."

In compliance with said action of the Board of Directors the distributees of said $30,000.00 were then charged on petitioner's books of account with the sum of $14,250.60. These are the accounts receivable referred to in this proceeding as "officers' accounts receivable."

Said stockholders who had so received said total amount of $14,250.60 were responsible financially far in excess of said amount and were at all times financially able to pay said amount and said accounts receivable in said amount were not doubtful or in any part worthless. However, no interest on said accounts receivable was paid by any of said stockholders to the petitioner and no notes or other evidences of indebtedness were given to the petitioner by any of them. During the month of January, 1921, dividends in excess of said amount of $14,250.60 payable to the said stockholders were distributed by the petitioner. At the time of the signing of this stipulation the fact as to whether said dividends in excess of $14,250.60 were paid in cash or whether a credit for said amount was entered against said accounts receivable in lieu of actual cash payment of the dividend or whether the said stockholders received the said dividends in cash and then paid and discharged said accounts receivable by the payment in cash to the petitioner, has not been definitely ascertained by counsel but the fact has been ascertained that said accounts receivable so incurred and so entered in respect of said stockholders was balanced and closed on the books of the petitioner at or about the time of the distribution of said dividends.

The "sundry accounts" of petitioner's ledger show charges in January, 1918, to the four shareholders of $14,250.60 and credits in January, 1921, of the same amount.

The petitioner argues that the amount of $14,250.60 was an account receivable in 1918 and 1919 and therefore within its invested capital. We are of opinion that the amount was not an account receivable nor other asset to be included in capital or surplus or undivided profits. The corporation in 1917 properly distributed $30,000 in the customary manner of a dividend. There is no evidence which would support an attack upon this distribution when it was made, and nothing which would fortify a demand for its return if any shareholder insisted upon keeping it. *Feick & Sons Co.* v. *Blair*, 26 Fed. (2d) 540; affirming 7 B. T. A. 106; *Hadley* v. *Commissioner*, 36 Fed. (2d) 543; affirming 6 B. T. A. 1031. Of course, if any or all shareholders had actually given it back, whether voluntarily or by virtue of some conceivable agreement, it would have

enlarged the existing surplus, and the invested capital would have been augmented accordingly. This would have been by way of paid-in surplus under the statute, but not by way of the corporation's rescission of a dividend validly declared and paid.

But, in fact, there was no repayment by the shareholders and no express obligation assumed by them to make repayment. They merely consented (if we may take the directors' resolution as an indication of the shareholders' individual acquiescence) that each " should be considered as a debtor to the corporation therefor, the sum to be deducted from any future dividends payable upon stock." This was, therefore, not an account receivable of the corporation, but only a statement that, in respect of earnings already actually distributed, the distribution should be charged as future rather than present dividends. So far as a present right of the corporation against the shareholders was concerned, it was without substance. The shareholders had the money and the right to keep it. Of course, they had no right to receive it again, and the directors' resolution to deduct it from future dividends added nothing to their inherent power to deal with future profits in their official discretion.

The distinction between this case and *Pictorial Review Co.*, 5 B. T. A. 416, relied on by petitioner, lies not alone in the promissory notes which were there given, but also on the circumstances which gave substantial character to an absolute right against the shareholders. That case indicates that it is not the attempted rescission of a prior dividend which enlarges invested capital to its prior state, but the contribution by the shareholders of substantial assets. The mere attempt retroactively to recall the declaration of a dividend where it had already been distributed or otherwise given substantial effect has been refused sanction. *L. Schepp Co.*, 25 B. T. A. 419, 434. In *C. S. Webb, Inc.*, 1 B. T. A. 269, such a distribution was excluded from invested capital until it was actually paid back to the corporation. The decisions cited by petitioner, *Kate C. Ryan, Executrix*, 2 B. T. A. 1130; *Booth Furniture & Carpet Co.*, 6 B. T. A. 886; *Comey & Johnson Co.*, 8 B. T. A. 52; *Younker Brothers, Inc.*, 8 B. T. A. 333; *D. B. Forrester et al.*, 12 B. T. A. 104; *Byrd Printing Co.*, 15 B. T. A. 55, in which loans to shareholders were held not to be dividends and not outside invested capital, are not controlling here, where there was a dividend in the first place. More similar cases have gone the other way, *Greenfield Brothers Clothing Co.*, 9 B. T. A. 9; *Temte-Johnson Co.*, 10 B. T. A. 287; and see *Zenith Milling Co.* v. *Lucas*, 41 Fed. (2d) 905; affirming 8 B. T. A. 1279; *Consolidated Electric Lamp Co.*, 1 B. T. A. 616; *Electrical Supply Co.*, 1 B. T. A. 658; *O'Neil Construction Co.*, 4 B. T. A. 401; *Lobsitz Hardware Co.*, 5 B. T. A. 295; *R. Hamerslough Mercantile Co.*, 6 B. T. A.

824; *Good Manufacturing Co.*, 7 B. T. A. 202; *Elgin Butter Tub Co.*, 12 B. T. A. 1313; *Adam, Meldrum & Anderson Co.*, 15 B. T. A. 812; *George Engineering Co.*, 21 B. T. A. 532. Even when amounts distributed to shareholders have been subsequently actually used by the corporation, they have been held to be borrowed and excluded from invested capital, *Weed & Brother* v. *United States*, 69 Ct. Cls. 246; 38 Fed. (2d) 935; certiorari denied, 282 U. S. 846; *Logan Gregg Hardware Co.* v. *Heiner*, 26 Fed. (2d) 131; *Feick & Sons Co.* v. *Blair*, 26 Fed. (2d) 540; affirming 7 B. T. A. 106; *Southport Mills, Ltd.* v. *Commissioner*, 26 Fed. (2d) 17; affirming 6 B. T. A. 1073; *Cohn-Goodman Co.*, 7 B. T. A. 475; *Roshek Brothers Co. et al.*, 2 B. T. A. 260; *William H. Davidow Sons Co.*, 1 B. T. A. 1215; *Kelly-Buckley Co.*, 1 B. T. A. 1154.

The determination of the respondent is sustained upon this point.

*Judgment will be entered under Rule 50.*